IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PACIFIC COMMUNITY RESOURCE CENTER** et al.,

    Plaintiffs,

  v.

**CITY OF GLENDALE, OREGON** et al.,

    Defendants.

_____

Civ. No. 6:13-cv-01272-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

  Plaintiff Pacific Community Resource Center (PCRC) is a registered non-profit organization purporting to provide housing to disabled and other low income individuals. PCRC, along with former and current tenants,[1] bring this action alleging that the City of Glendale (Glendale) and various Glendale officials discriminated against plaintiffs by: (1) obstructing PCRC's efforts to obtain a conditional use permit to operate the Glendale Hotel as multi-family housing in the commercial zone; (2) selectively enforcing certificate of occupancy requirements; and (3) removing multi-family housing as a permitted use in the commercial zone through the adoption of Glendale Municipal Ordinance (GMO) 03-2012.

  This Court is asked to consider: (1) whether defendants discriminated and/or retaliated against plaintiffs under the Fair Housing Amendments Act (FHAA), 42 U.S.C. §§ 3601–3619,[2]

---

[1] Michael Cassidy, Art Corbett, Becky Corbett and David Rothenberg are current tenants. Second Am. Compl. ¶¶ 11–13, 16, ECF No. 35. Don Billings and Darlene Billings are former tenants. *Id.* at ¶¶ 14–15.
[2] Under the FHAA, "Congress extended the [Fair Housing Act's] protection to handicapped persons." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (Mobile Home I).

1 – OPINION AND ORDER

(2) whether defendants denied plaintiffs a reasonable accommodation under ORS § 659A.145; and (3) whether defendants' conduct violated the Equal Protection Clause of the Fourteenth Amendment.[3] Because a fuller record will afford a more substantial basis for decision and the existing record supports triable issues of fact, this Court finds that it cannot determine whether defendants violated the FHAA, 42 U.S.C. §§ 3604(a), 3617, ORS § 659A.145, or the Equal Protection Clause of the Fourteenth. Thus, defendants' motion for summary judgment, ECF No. 24, is GRANTED IN PART[4] and DENIED IN PART. Plaintiffs' motion for leave to amend, ECF No. 94, is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs' claims arise out of alleged FHAA, 42 U.S.C. §§ 3604(a), 3617, Fourteenth Amendment, 42 U.S.C. § 1983, and ORS § 659A.145 violations. All claims are based on Glendale's alleged discriminatory obstruction of PCRC's efforts to obtain a conditional use permit, selective enforcement of certificate of occupancy requirements, and Glendale's adoption of GMO 03-2012.

Beginning in October 2009, PCRC entered into a commercial real estate agreement with Cow Creek Properties, LLC (Cow Creek) for a seventeen-unit motel (Glendale Hotel) located in Glendale's commercial zone. Pls.' Aff. Prelim. Inj. 1, ECF No. 39; Pls.' Resp. Summ. J. 40, ECF No. 94-4. Shortly thereafter, plaintiff Cassidy, on behalf of PCRC, attended a City Council meeting and obtained permission to rent rooms to small businesses. *See* Defs.' Resp. Second Mot. Prelim. Inj. 2, ECF No. 46-3; *see also* Pls.' Resp. Summ. J. 88, ECF No. 94-4.

---

[3] Plaintiffs withdrew their claims for violation of the Due Process Clause of the Fourteenth Amendment. *See* Minutes, Feb. 5, 2015, ECF No. 105.
[4] Defendants are **awarded** summary judgment as to plaintiffs' disparate impact arguments relating to disability. *See infra* §§ I(A)(i), III(B).

2 – OPINION AND ORDER

On or about September 11, 2011, Cassidy asked the city recorder, defendant Stanfill, what action he needed to take in order to operate the Glendale Hotel as multi-family housing. Pls.' Resp. Summ. J. 104–107, ECF No. 94-4. Plaintiffs allege that in response, defendant Stanfill informed Cassidy "that's not available to you, [multi-family housing], and we don't want those kind of people in our town." *Id*. at 107.[5]

On or about October 21, 2011, Glendale sent a letter to PCRC indicating that PCRC was in potential violation of residential use in the commercial zone. Second Am. Compl. ¶ 42, ECF No. 35; Pls.' Resp. Summ. J. 131, ECF No. 94-4. Upon receipt of this notification, PCRC communicated with the City Council multiple times to discuss zoning compliance alternatives. *See* Decl. of Art. Corbett 2, ECF No. 40; Pls.' Resp. Summ. J. 9, ECF No. 94-10. Despite these communications, Glendale and PCRC were unable to reach an agreement. *See* Decl. of Kayrene Loggins 2, ECF No. 41.

On or about December 3, 2011, plaintiff Cassidy received notice for a zoning ordinance violation from Glendale. Second Am. Compl. ¶ 57, ECF No. 35. Cassidy contested this violation, but was ultimately convicted at trial on or about December 13, 2012, for "renting, letting or allowing residential occupancy in a commercial zone, without having received and obtained an R-2 Certificate of Occupancy; and in the case of accessary use apartments, without having first obtained a conditional use permit." Defs.' Mot. Summ. J. 1–2, ECF No. 91-3.

In an effort to obtain a R-2 certificate of occupancy, PCRC initiated a series of inspections with the State Fire Marshal. The first inspection, occurring February 28, 2012, resulted in a report identifying eleven deficiencies. Second Am. Compl. ¶¶ 71–73, ECF No. 35;

---

[5] Plaintiffs allege that similar comments were made on other subsequent occasions by Glendale City Council members. *See, e.g.*, Second Am. Compl. ¶¶ 44, 47, ECF No. 35; Pls.' Resp. Summ. J. 107, ECF No. 94-4; Pls.' Resp. Summ. J. 16, ECF No. 94-6; Pls.' Resp. Summ. J. 13, ECF No. 94-10.

3 – OPINION AND ORDER

Pls.' Resp. Summ. J. 166, ECF No. 94-4. Following a subsequent inspection, occurring May 10, 2012, the Fire Marshal issued a report finding that ten deficiencies were resolved and that the only remaining deficiency "was failure to obtain a certificate of occupancy." Second Am. Compl. ¶ 79, ECF No. 35. On May 11, 2012, PCRC approached Glendale to acquire a certificate of occupancy sign-off.[6] *Id.* at ¶ 80; Pls.' Resp. Summ. J. 31, ECF No. 94-11. Glendale officials refused to provide plaintiffs with this sign-off because of non-compliance with city requirements. Defs.' Mot. Summ. J. 2–3, ECF No. 91-1; Pls.' Resp. Summ. J. 32, ECF No. 94-11. As a result, Douglas County did not issue the R-2 certificate of occupancy to plaintiffs.

On April 9, 2012, during plaintiffs' pursuit of the R-2 certificate of occupancy, the Glendale City Council unanimously adopted GMO 03-2012. Second Am. Compl. ¶ 60, ECF No. 35. GMO 03-2012 amended GMO 01-2005 and removed multi-family housing as a permitted use in the commercial zone. *See* Defs.' Mot. Summ. J. 3–4, ECF No. 91-1. Plaintiffs unsuccessfully challenged the removal of multi-family housing under GMO 03-2012 through the Land Use Board of Appeals.[7]

On January 21, 2013, Glendale issued plaintiffs a notice of building code civil penalty for violation of Oregon Structural Specialty Code (OSSC) § 111.1 Use and occupancy.[8] Second Am.

---

[6] To obtain a certificate of occupancy from Douglas County, plaintiffs needed to first obtain a sign-off from Glendale indicating that they had complied with city ordinances. *See* Pls.' Resp. Summ. J. 31–35, ECF No. 94-11.
[7] *See Cassidy v. City of Glendale*, OR. LAND USE BD. OF APP. No. 2012-033, 12–16 (Oct. 10, 2012), *available at* http://www.oregon.gov/luba/pages/2012opinions.aspx.
[8] OSSC § 111.1 provides:

> No building or structure shall be used or occupied, and no change in the existing character, use or occupancy classification of a building or structure or portion thereof shall be made, until the *building official* has issued a certificate of occupancy for such change in character, use or occupancy therefor as provided herein. Issuance of a certificate of occupancy shall not be construed as an approval of a violation of the provisions of this code or other ordinances of the jurisdiction.

4 – OPINION AND ORDER

Compl. ¶ 119, ECF No. 35. On August 22, 2013, Cow Creek received an invoice stating the civil penalties balance amounted to $30,000. Pls.' Aff. Prelim. Inj. 2, ECF No. 39. By September 16, 2013, this balance had increased to $65,000. Pls.' Mot. Expedited Hr'g & Prelim. Inj. 2, ECF No. 22. To date, plaintiffs continue to operate the motel for residential use and defendants continue to levy civil penalties against the property. Defs.' Resp. Second Mot. Prelim. Inj. 2, ECF No. 46-2.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiffs contend that: (1) defendants discriminated and/or retaliated against plaintiffs under the FHAA, 42 U.S.C. §§ 3604(a), 3617; (2) defendants denied plaintiffs a reasonable

---

2010 OREGON STRUCTURAL SPECIALTY CODE, CHAPTER 1 – SCOPE AND ADMINISTRATION, *available at* http://ecodes.biz/ecodes_support/free_resources/Oregon/10_Structural/10_PDFs/Chapter%201_Scope%20and%20Administration.pdf (emphasis in original).

5 – OPINION AND ORDER

accommodation under ORS § 659A.145; and (3) defendants conduct violated the Equal Protection Clause of the Fourteenth Amendment. Defendants move for summary judgment as to all claims.

## I. FHAA

Plaintiffs contend that defendants discriminated and retaliated against them under the FHAA. This Court addresses each claim in sequence.

### A. Discrimination

"The FHA forbids discrimination in the sale or rental of housing, which includes making unavailable or denying a dwelling to a buyer or renter because of a handicap," *Budnick v. Town of Carefree*, 518 F.3d 1109, 1113 (9th Cir. 2008) (citations and internal quotation marks omitted), or any person because of "race, color . . . or national origin," 42 U.S.C. § 3604(a). It is "well established that zoning practices that discriminate against disabled individuals can be discriminatory and therefore violate § 3604." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) (citing *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 803–04 (9th Cir. 1994)); *see also Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P.*, 488 U.S. 15, 18 (1988) (holding that zoning practices that discriminate against racial minorities can violate the FHA).

"As a general matter, FHA claims are evaluated under the burden-shifting framework of the Title VII discrimination analysis and may be brought under theories of both disparate treatment and disparate impact."[9] *Comm. Concerning Cmty. Improvement v. City of Modesto*,

---

[9] Importantly, a plaintiff need not use the test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), and "may 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the defendant and that the defendant's actions adversely affected the party in some way." *Pac. Shores Props.*, 730 F.3d at 1158 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). Under the direct or circumstantial evidence approach, this Court analyzes whether the defendant's actions

6 – OPINION AND ORDER

583 F.3d 690, 711 (9th Cir. 2009) (citations omitted). "To establish a prima facie case of disparate impact under the FHA, 'a plaintiff must show at least that the defendant's actions had a discriminatory effect.'"[10] *Id.* (quoting *Pfaff*, 88 F.3d at 745). "'Discriminatory effect' describes conduct that actually or predictably resulted in discrimination." *Pfaff*, 88 F.3d at 745 (citation omitted). "To establish a prima facie case of discrimination without intent, the charging party must 'prove the discriminatory impact at issue; raising an inference of discriminatory impact is insufficient.'" *Id.* at 746 (internal quotation marks and citations omitted). This discriminatory impact need be "a significantly adverse or disproportionate impact on persons of a particular [type] produced by the [defendants'] facially neutral acts or practices." *Comm. Concerning Cmty. Improvement*, 583 F.3d at 711 (citations and internal quotation marks omitted).

Plaintiffs, in their second amended complaint, only allege discrimination under a theory of disparate impact. On December 29, 2014, plaintiffs moved for leave to amend their complaint a third time to add a claim of disparate treatment under the FHAA. *See* Pls.' Resp. Summ. J. 8–9, ECF No. 94. Defendants contend that plaintiffs' motion should be denied on multiple grounds, including: lack of "good cause," undue delay, prejudice, and bad faith. Defs.' Reply Summ. J. 2–7, ECF No. 96. This Court, although receptive to defendants' timeliness argument, is not persuaded. Plaintiffs have repeatedly alleged that defendants treated them differently from similarly situated individuals because of their *disability* and/or *race*. *See, e.g.*, Second Am. Compl. 22, ECF No. 35; Pls.' Mem. Supp. Mot. Prelim. Inj. Relief 6, ECF No. 38. As a result,

---

were motivated by a discriminatory purpose by examining "(1) statistics demonstrating a 'clear pattern unexplainable on grounds other than discriminatory ones, (2) [t]he historical background of the decision, (3) [t]he specific sequence of events leading up to the challenged decision, (4) the defendant's departures from its normal procedures or substantive conclusions, and (5) relevant legislative or administrative history." *Id.* at 1158–59 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977)) (internal quotation marks omitted).

[10] Plaintiffs' prima facie case of disparate impact does not require evidence of discriminatory intent. *See, e.g., Pfaff v. United States Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745–46 (9th Cir. 1996) (citing *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1217 (2d Cir.1987)).

7 – OPINION AND ORDER

this Court allows plaintiffs to proceed on a disparate treatment theory under the FHAA *absent any additional pleadings*.

### i. Disparate Impact

To demonstrate whether defendants' actions had a discriminatory effect, plaintiff must provide proof of (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendants' facially neutral acts or practices. *Comm. Concerning Cmty. Improvement*, 583 F.3d at 711.

Plaintiffs contend that defendants' enactment of GMO 03-2012 has a significantly disproportionate impact on "disabled persons and minorities who seek to live in the city." Pls.' Resp. Summ. J. 15, ECF No. 94. To support this contention, plaintiffs proffer census statistics created by the United States Census Bureau. *See, e.g.,* Req. Judicial Notice 1–19, ECF No. 95. This Court, having reviewed the census data, is unable to determine whether GMO 03-2012 had a disparate impact on *disabled* persons as compared to *non-disabled* persons. Plaintiffs' statistics simply do not provide a proper comparison between the composition of disabled persons residing at the Glendale Hotel and those residing in the broader city of Glendale. *See Budnick*, 518 F.3d at 1118 ("[Plaintiff] has set forth no evidence, statistical or otherwise, from which we can conclude that [defendant's] permit practices have a disproportionate impact on the disabled or that there is triable issue of fact as to the impact of [defendant's] permit practices on the disabled."); *see also Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1253 (10th Cir. 1995) ("[A]ny statistical evidence must involve the appropriate comparables."). In contrast, the census data identifying the percentage of American Indians residing in the city of Glendale, when viewed in light of plaintiffs' declarations, is sufficient, albeit barely, to raise a triable issue

of fact on that theory of disparate impact. *See, e.g.*, Defs.' Reply Summ. J. 2, ECF No. 96-2; Pls.' Surreply Summ. J. 1, ECF No. 102-1.

### ii. Disparate Treatment

To establish a prima facie case of disparate treatment, plaintiffs need establish that: (1) plaintiffs are members of a protected class; (2) plaintiffs applied for a conditional use permit and were qualified to receive it; (3) the conditional use permit was denied despite qualification; and (4) defendants approved a conditional use permit for a similarly situated party during a period relatively near the time plaintiffs were denied a conditional use permit. *Budnick*, 518 F.3d at 1114.

From the onset of this litigation, plaintiffs have struggled to identify a discreet class to which they belong. *Compare* Order 4 n.6, Oct. 23, 2013, ECF No. 31 (finding that plaintiffs' allegations are "most readily amenable to discrimination based upon socio-economic status"), *with* Order 5, Jan. 16, 2014, ECF No. 52 ("Plaintiffs generally allege that the defendants selectively enforced zoning ordinances to prevent 'disabled and Native Americans from obtaining housing in Glendale, Oregon.'"). Plaintiffs proffer two alternative class theories under the FHAA: discrimination because of *disability* and discrimination because of *race*. All six plaintiffs identify themselves as disabled, but only three plaintiffs identify themselves as American Indian. This Court proceeds assuming that plaintiffs propose two distinct, but alternative class theories.

As to the remaining elements, this Court has serious reservations about whether plaintiffs were qualified to receive the conditional use permit *prior to* the adoption of GMO 03-2012. *See* Second Am. Compl. ¶ 79, ECF No. 35 (alleging that Glendale Hotel received a favorable report following a third inspection on *May 10, 2012*); *see also* Defs.' Mot. Summ. J. 4, ECF No. 91-1.

9 – OPINION AND ORDER

However, in lieu of satisfying the elements of a prima facie case, plaintiffs may proceed by simply producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged action. *Budnick*, 518 F.3d at 1114.

Plaintiffs have proffered multiple declarations asserting that defendants made statements suggesting animus toward plaintiffs as a group. *See, e.g.*, Pls.' Resp. Summ. J. 107, ECF No. 94-4 ("[T]hat's not available to you, multiple family, and we don't want those kind of people in our town."); Pls.' Resp. Summ. J. 16, ECF No. 94-6 ("At the city council meetings I've heard the words 'Those kind of people' and that we are - - we're like the illegals coming across the border."); Pls.' Resp. Summ. J. 13, ECF No. 94-10 ("'No, you can't do that. We don't want those kind of people in here.'"). These statements are more persuasive when considered in light of evidence suggesting selective enforcement of certificate of occupancy requirements. *See* Pls.' Resp. Summ. J. 27, 44, ECF No. 94-7. Combined, this evidence is sufficient to raise a triable issue of fact that a discriminatory reason more likely than not motivated the challenged action.

In rebuttal, defendants' proffered rational— preservation of the commercial district[11]—is legitimate and nondiscriminatory. *See Budnick*, 518 F.3d at 1116 ("[A] city's interest in achieving its zoning goals has long been recognized as a legitimate governmental interest."); *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).

Because defendants' rational is sufficient, plaintiffs must then "prove by a preponderance of the evidence that the defendants' asserted reason is a pretext for discrimination." *Budnick*, 518 F.3d at 1114. This Court, in reliance on the direct and circumstantial evidence identified above, concludes that plaintiffs have raised a triable issue of fact as to pretext.

## B. Retaliation

---

[11] *See* Pls.' Supplement 49, 71–72, ECF No. 106-1.

10 – OPINION AND ORDER

The FHAA's interference provision, 42 U.S.C. § 3617, is assessed under the *McDonnell Douglas* burden-shifting framework. *See Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). Under that framework, plaintiffs must demonstrate that: (1) they were engaged in a protected activity; (2) they suffered an adverse action; and (3) there was a causal link between the two. *Id.* at 1192. Because the parties' memoranda focus exclusively on the first prong, this Court limits its inquiry to that prong.

The parties dispute whether plaintiffs have a *right* to violate GMO 03-2012, i.e., operate a multi-family housing unit in the Glendale commercial zone in violation of a local zoning ordinance. To put that matter to rest, plaintiffs' violation of GMO 03-2012 is *not* a protected activity under the FHAA. Plaintiffs did, however, have a right to petition the City Council for a conditional use permit without being subject to discrimination. Defendants' adoption of GMO 03-2012, which followed closely on the heels of this protected activity,[12] particularly when considered in light of defendants' alleged animus toward plaintiffs, raises a triable issue of fact as to plaintiffs' retaliation claim under § 3617. *See Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1149 (C.D. Cal. 2001) ("Because plaintiffs have raised a triable issue of fact with respect to their other FHA claims, they have raised a triable issue of fact regarding their § 3617 claims as well."); *see also Comm. Concerning Cmty. Improvement*, 583 F.3d at 713 (concluding that the FHAA "reaches post-acquisition discrimination").

## II. ORS § 659A.145

Plaintiffs contend that defendants denied them a reasonable accommodation under ORS § 659A.145. Analysis under ORS § 659A.145 is substantially equivalent to analysis under the

---

[12] *C.f. Villiarimo v. Aloha I. Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." (citation omitted)).

11 – OPINION AND ORDER

FHAA. *See Or. Bureau of Labor & Indus. ex rel Mayorga v. Hous. Auth. of Douglas Cnty.*, Civ. No. 6:13-cv-01205-MC, 2014 WL 5285609, at *6 (D. Or. Oct. 15, 2014); *Fishing Rock Owners' Ass'n, Inc. v. Roberts*, 6 F. Supp. 3d 1132, 1138 n.1 (D. Or. Mar. 18, 2014). To establish a discrimination claim under ORS § 659A.145 for a failure to reasonably accommodate, plaintiffs must demonstrate that: (1) they suffer from a disability as defined by ORS § 659A.145; (2) defendants knew or reasonably should have known of plaintiffs' disability; (3) accommodation of the disability may be necessary to afford plaintiffs an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such an accommodation. *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003). Because the record is sufficient to raise a genuine issue of material fact as to the first two prongs,[13] this Court's inquiry will focus on the remaining prongs.

As recognized in *Giebeler*, a governmental entity may be required to bend zoning and land use requirements in order to reasonably accommodate the needs of disabled individuals. 343 F.3d at 1154–55. Assuming that, at least for purposes of this motion, plaintiffs' interactions with defendants constituted a request for a reasonable accommodation, i.e., a conditional use permit; plaintiffs are only entitled to receive that request *if* it may be necessary to afford them an equal opportunity to use and enjoy a dwelling and *if* it was reasonable within the meaning of ORS § 659A.145. *Id.* at 1155; *Or. Bureau of Labor & Indus. ex rel Mayorga*, 2014 WL 5285609, at *8.

To demonstrate whether an accommodation is necessary, plaintiffs must show that, *but for* the accommodation, they are likely to be denied an equal opportunity to enjoy the housing of their choice. *Giebeler*, 343 F.3d at 1155. Absent this causal link, there can be no obligation on

---

[13] *See, e.g.*, Pls.' Resp. Summ. J. 26, ECF No. 94-2 ("When you met some of the residents, did you notice if any of them were disabled at that time? A. Yeah . . . ."); Pls.' Resp. Summ. J. 107, ECF No. 94-4 ("I told [Stanfill] about, in general, what our -- you know, that we wanted to help certain kind of people transition from homeless to being okay . . . ."); Pls.' Surreply Summ. J. 1, ECF No. 102-1 (describing physical impairments).

12 – OPINION AND ORDER

the part of defendants to make a reasonable accommodation. *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (Mobile Home II).

Defendants contend that plaintiffs failed to demonstrate this causal link. *See* Defs.' Mot. Summ. J. 22, ECF No. 91. In responsive briefing, which included a response and surreply, plaintiffs did not proffer any argument or evidence relating to this causal link deficiency. *See* Pls.' Resp. Summ. J. 19–20, ECF No. 94; Pls.' Surreply Summ. J. 1–10, ECF No. 102. This Court, having independently reviewed the record, recognizes that plaintiffs' allegations and related deposition testimony generally lend support to an access to housing theory, i.e., *but for* multi-family housing at the Glendale Hotel, plaintiffs would not have access to low-income housing. That recognition, when considered in light of housing limitations within the local community,[14] leads this Court to conclude that the better course would be to proceed to a full trial on this claim because a fuller record will afford a more substantial basis for decision. *See Anderson*, 477 U.S. at 255.

### III. Fourteenth Amendment Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. art. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to

---

[14] *See* Pls.' Resp. Summ. J. 1, ECF No. 94-2 (indicating that 92.1% of housing units were occupied); Pls.' Resp. Summ. J. 13–14, ECF No. 94-6 (indicating that local HUD housing was "really hard to get in" to and is "in disrepair").

a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457-58 (1988).

In any equal protection analysis, this Court must first identify the class or group being discriminated against. *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 945 (9th Cir. 2004), *overruled on other grounds as recognized by Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). As indicated *supra* § I(A)(ii), plaintiffs have struggled to identify a discreet class to which they belong. Pursuant to their equal protection claim, plaintiffs argue under a "class of one" theory that defendants' selective enforcement of zoning regulations singled out "persons with disabilities and minorities." Pls.' Resp. Summ. J. 18, ECF No. 94.

The trouble with plaintiffs' "class of one" theory is that they *allege membership* in a class or group—they allege that they were discriminated against because they were disabled and/or American Indian. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing a cause of action on behalf of a "class of one" where "the plaintiff did not allege membership in a class or group"); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (a "plaintiff in a 'class of one' case does not allege that the defendants discriminated against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily" (citation omitted)).

For purposes of this analysis, this Court will proceed assuming that plaintiffs intended to argue two distinct, but alternative theories: (A) "*class of one*" discrimination and (B) "*class*" discrimination.

**A. Class of One**

14 – OPINION AND ORDER

Pursuant to the "class of one" theory, plaintiffs can establish an equal protection claim by demonstrating that they have been (1) intentionally (2) treated differently from others similarly situated and (3) that there is no rational basis for the difference in treatment. *Squaw Valley Dev. Co.*, 375 F.3d at 944; *see also Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Plaintiffs contend that the Glendale Hotel was intentionally treated differently from a similarly situated apartment complex, the Carlillie Apartments, and three additional single-family homes.

### i. Unique Treatment

The Carlillie Apartments, much like the Glendale Hotel, do operate a multi-family housing unit in the commercial district absent a current certificate of occupancy. *See, e.g.*, Defs.' Mot. Summ. J. 2, ECF No. 91-4. Those facts alone may not make the two similarly situated. *See Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd*, *Willowbrook*, 528 U.S. at 565 ("Standing by itself, this difference in treatment would not have been a denial of equal protection, but merely an example of uneven law enforcement, than which nothing is more common nor . . . constitutionally innocent."). However, *unlike* the Glendale Hotel, the Carlillie Apartments have *not* been cited for failure to comply with certificate of occupancy requirements. That difference, when considered in light of alleged statements suggesting animus, *see supra* § I(A)(ii), is sufficient to raise a triable issue of fact as to this building.

Plaintiffs' general reliance on the "at least [three] additional single-family homes" is more difficult to evaluate in light of unclear deposition testimony. *See* Pls.' Resp. Summ. J. 13–24, ECF No. 94-2. This Court, having reviewed the cited deposition testimony and relevant memoranda, is again reluctant to preclude these buildings as a basis for plaintiffs' equal

15 – OPINION AND ORDER

protection claims. These properties also appear to operate as multi-family housing in the commercial district absent a current certificate of occupancy. *See id*. Thus, plaintiffs have raised a triable issue of fact as to these buildings.

### ii. Intentional Treatment

As indicated *supra* § I(A)(ii), plaintiffs have proffered multiple declarations asserting that various defendants made statements suggesting animus toward plaintiffs as a group. *See, e.g.*, Pls.' Resp. Summ. J. 40, ECF No. 94-2 ("But there could have been a perception of that, a perception of the idea that you had disabled people there and maybe they were lesser people."); Pls.' Resp. Summ. J. 107, ECF No. 94-4 ("[T]hat's not available to you, multiple family, and we don't want those kind of people in our town."); Pls.' Resp. Summ. J. 16, ECF No. 94-6 ("At the city council meetings I've heard the words 'Those kind of people' and that we are - - we're like the illegals coming across the border."); Pls.' Resp. Summ. J. 13, ECF No. 94-10 ("'No, you can't do that. We don't want those kind of people in here.'"). This evidence is sufficient to raise triable issues of fact as to whether defendants "intended to treat [plaintiffs] differently from other applicants." *Gerhart*, 637 F.3d at 1022.

### iii. Rational Basis

Disparate government treatment will survive rational basis scrutiny if it bears a rational relation to a legitimate state interest. *Squaw Valley Dev. Co.*, 375 F.3d at 944. Selective enforcement of valid laws, without more, does not make governmental action irrational. *Id*. However, "there is no rational basis for state action that is malicious, irrational or plainly arbitrary." *Id*. (citation and internal quotation marks omitted).

As indicated *supra* § I(A)(ii), defendants' proffered reason is legitimate and nondiscriminatory. *See Budnick*, 518 F.3d at 1116. Thus, to succeed on their equal protection

16 – OPINION AND ORDER

claims, plaintiffs must show that defendants "were motivated by some personal or extra-statutory end." *Squaw Valley Dev. Co.*, 375 F.3d at 945. To make such a showing, plaintiffs need raise a triable issue of fact as to whether the proffered rational basis was objectively false or whether the defendants actually acted based on an improper motive. *Id.* at 946. This Court, in reliance on the evidence identified in *supra* § I(A)(ii) and defendants' selective enforcement of certificate of occupancy requirements, concludes that plaintiffs have raised a triable issue of fact as to pretext.

## B. Class Discrimination

Plaintiffs, pursuant to their class discrimination theory, allege that defendants discriminated against them because they are *disabled* and/or *American Indian*. These claims under § 1983, like plaintiffs' claims under the FHAA, require plaintiffs to show that the "actions of the defendants had a discriminatory impact, and that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class." *Comm. Concerning Cmty. Improvement*, 583 F.3d at 702–03 (citing *Lee v. City of L.A.*, 250 F.3d 668, 686–87 (9th Cir. 2001)). Where, as here, the challenged governmental conduct is facially neutral, proof of disparate impact on an identifiable group, such as evidence of gross statistical disparities, can satisfy the intent requirement where it tends to show that some invidious or discriminatory purposes underlies the conduct. *Id.* at 703. This Court, in reliance on its earlier FHAA discrimination analysis, *see supra* § I(A), finds that plaintiffs have raised triable issues of fact and may proceed at trial on *racial* disparate impact and treatment theories, and a *disability* disparate treatment theory.

## **CONCLUSION**

For these reasons, defendants' motion for summary judgment, ECF No.91, is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion for leave to amend, ECF No. 94, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 12th day of February, 2015.

_____
**Michael J. McShane
United States District Judge**